Antonio Muñiz, demandante y apelado, *v.* The Aetna Casualty & Surety Co., demandada y apelante.

No. 4441.—*Visto:* Junio 15, 1928. *Resuelto:* Noviembre 26, 1928.

*Hartzell, Kelley & Hartzell* y *R. O. Fernández,* abogados de la apelante; *Buenaventura Esteves,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

Esta es una apelación contra sentencia dictada por la Corte de Distrito de Aguadilla, en un pleito sobre cumplimiento de contrato de seguro, e indemnización de daños y perjuicios.

La opinión y sentencia en el caso fueron así:

"Hechos, opinión y sentencia.—El doctor Antonio Muñiz presentó ante esta corte una demanda sobre cumplimiento de contrato e indemnización de daños y perjuicios contra The Aetna Casualty and Surety Company.

"Contra dicha demanda dedujo la demandada una moción para eliminar, que declarada con lugar determinó una demanda enmendada, contra la que también estableció una moción para eliminar, que fué declarada sin lugar y excepcionada también por dicha demandada esta demanda enmendada fué declarada con lugar dichas excepciones, por lo que en 7 de febrero del año en curso presentó una segunda demanda enmendada el actor, la que a la letra copiada en lo necesario, dice así:

" '1.—El demandante es mayor de edad, médico-cirujano con ejercicio en Puerto Rico y vecindad en San Sebastián, y la demandada es una corporación extranjera dedicada al negocio de seguros y que trabaja en esta isla por mediación de agentes autorizados que residen en la ciudad de San Juan.

" '2.—El día 4 de abril de 1925 el demandante y la demandada celebraron un Contrato de Seguro sobre automóvil "Elcar" tipo "touring," tablilla No. 6030, propiedad del demandante, bajo los pactos y estipulaciones siguientes: Responsabilidad por daño personal (límite, una persona) $5,000.00; (límite, un accidente) $10,000.00; responsabilidad por daño a la propiedad ajena, límite $1,000.00; Choque (daño al automóvil) cubierta completa. Y al efecto la demandada expidió a favor del demandante su Póliza No. 3512970, cuyo período de duración empezó a mediodía del día 4 de abril de 1926, hora oficial en la localidad del riesgo.

" '3.—Que el día 18 de agosto de 1925 el demandante viajaba en el referido automóvil, guiado a la sazón por el chauffeur José Quiñones, licencia No. 16214, con destino a Aguadilla, y al llegar al Km. 2, Hm. 2 de la carretera No. 8, Sección Aguadilla–Adjuntas, caminaba en dirección opuesta un truck de carga y entonces el chauffeur del demandante guió a su derecha para pasar, con tan mala suerte que las ruedas traseras patinaron y el automóvil del demandante fué a parar a la cuneta derecha de la carretera, chocando contra un poste situado a la orilla de la misma y sufriendo en consecuencia los siguientes daños y averías: rotura de la capota, rotura del guardalodo trasero derecho, la rueda derecha trasera doblada con el disco, partida la plancha de metal del estribo derecho, hundida la caja en el lado derecho y otros desperfectos de menor importancia.

" '4.—Que el demandante dió cuenta del accidente a la demandada al día siguiente de haber ocurrido y empezó inmediatamente a gestionar el cumplimiento del contrato de seguro en la forma que estipula la póliza; pero la demandada empezó a poner inconvenientes y terminó por negarse a cumplir dicho contrato, a pesar de que este demandante estuvo siempre dispuesto a cumplirlo en la parte que le incumbía.

" '*Segunda causa de acción.*—El demandante reproduce las anteriores alegaciones y, por una segunda causa de acción, alega:

" 'a.—Que, como consecuencia directa de la referida colisión o choque, el dicho automóvil del demandante estuvo inservible para su uso por espacio de siete meses, o sea hasta el 17 de marzo de 1926, y durante este lapso de tiempo el demandante se vió obligado a alquilar otros vehículos para sus atenciones profesionales y para las gestiones relacionadas con el mismo accidente, gastando en ello, hasta entonces, la suma de $158.00.

" 'b.—Que no pudiendo conseguir que la demandada reparara el automóvil y siendo éste de gran necesidad para el demandante, en

el mes de marzo de 1926 se decidió el demandante a repararlo por su cuenta, gastando en ello, entre materiales y mano de obra, la suma de $91.00.

" 'c.—Que debido a la actitud temeraria de la demandada, no fué posible para las partes llegar a un acuerdo para determinar la cuantía o valor de los daños sufridos por el automóvil a consecuencia del choque; y el demandante alega especialmente que dicho vehículo sufrió una depreciación de $650.00, según el juicio y tasación de peritos, siendo dicha depreciación un resultado directo del repetido accidente.

" 'Súplica.—En mérito de lo alegado, el demandante a esta Hon. Corte suplica se sirva en su día dictar sentencia en este caso con los siguientes pronunciamientos:

" '1.—Declarando con lugar la primera causa de acción de esta demanda y condenando a la demandada a cumplir el contrato de seguro celebrado con el demandante según la Póliza de la demandada No. 3512970;

" '2.—Declarando con lugar la segunda causa de acción de esta demanda y condenando a la demandada a pagar al demandante, por indemnización de daños y perjuicios, la suma total de ochocientos noventa y nueve dollars ($899.00);

" '3.—Condenando a la demandada a pagar al demandante todas las costas y desembolsos de este pleito, incluyendo honorarios de abogado, y haciendo los demás pronunciamientos que fueren procedentes en este caso'

"Contra esta demanda presentó su contestación la demandada negando todas y cada una de las alegaciones contenidas en dicha demanda y estableciendo como materia nueva que después de haber ocurrido el accidente el demandante convino con la demandada, en que las averías sufridas por el automóvil mencionado en la demanda serían reparadas por la demandada, y luego de hecho este convenio, el demandante se negó a cumplirlo, a pesar de que la demandada siempre estuvo dispuesta a efectuar las reparaciones que fueran necesarias en dicho automóvil. Alegando que este convenio suplantó (superseded) la póliza en cuanto a las expresadas averías, y el demandante no tiene otro derecho que exigir el cumplimiento de dicho convenio; que si el demandante tuviera aún algún derecho de reclamación basado en la póliza, tal reclamación sólo podría incluir el costo razonable de las reparaciones de acuerdo con la póliza. Cláusula tercera.

"El día señalado para la vista de este caso comparecieron las partes por sus abogados, el demandante representado por el Lcdo.

Buenaventura Esteves y la compañía demandada por el letrado Rafael O. Fernández, de la firma profesional Hartzell, Kelly & Hartzell; habiendo pedido la suspensión de la vista la parte demandada por no haber comparecido su testigo Antonio Pavía Fernández.

"Al efecto del artículo 202 del Código de Enjuiciamiento Civil se aceptó por el demandante, sin admitir su certeza, la declaración del testigo ausente tal como fué dictada por el abogado de la compañía demandada, y así las cosas se procedió al examen de la prueba documental y testifical del demandante.

"La declaración del testigo de la demandada, Antonio Pavía Fernández, que como se ha dicho no.pudo comparecer, quedó redactada en estos términos:

" 'Que en una fecha próxima posterior a la ocurrencia del accidente a que se refiere la demanda, el demandante Dr. Antonio Muñiz, encontrándose en la ciudad de San Juan, solicitó del Sr. Pavía que lo acompañase a la oficina de los Sres. D. R. Carrión ·Inc., agentes de la compañía demandada en este caso; que juntos los dos, el testigo y el demandante, se personaron en dicha oficina y allí tuvieron una conferencia con el Sr. Porrata Doria, uno de los oficiales de la compañía en cuanto a los daños sufridos por el automóvil; que en esa conferencia el demandante admitió que los daños sufridos por su automóvil eran de poca importancia y que se convino, después de haberse discutido el asunto, en que el demandante enviaría su automóvil a San Juan para que fuera reparado por la compañía demandada; que el demandante, después de haber hecho este convenio con la compañía demandada. puso inconvenientes en su cumplimiento y después se negó rotundamente a cumplirlo; que la demandada, según conocimiento propio del señor Pavía, estuvo y ha estado siempre dispuesta a cumplir con ese ·convenio efectuado entre la demandada y el demandante y ha estado siempre dispuesta a hacer las reparaciones que fueren necesarias en el automóvil del demandante, por consecuencia de las averías sufridas por el accidente a que se contrae este caso.'

"Como cuestión previa la corte entiende que esta declaración en sí, negada como fué por la del demandante, no es prueba bastante, en buena doctrina, para suplantar ni destruir la que acerca de la existencia del contrato que por dicha declaración se trata de suplantar, presentara la parte demandante, pues ella consistió en la mejor prueba, o sea en la presentación del contrato original de póliza celebrado entre ambas partes.

"Pasando ahora a la cuestión de hechos, la corte estima que se

han probado por la evidencia aportada por el demandante, todos y cada uno de los contenidos en su demanda; y resultando de dicha prueba, que la demandada actuó temerariamente en este caso, no hay duda de que la parte actora tiene derecho a daños compensatorios (*compensatory damages*), por lo que la corte es de opinión que la ley y los hechos están a favor del demandante y en contra de la demandada, y declara con lugar la demanda por ambas causas de acción, condenando a la compañía demandada al pago de la suma reclamada menos una partida de $30.00 como sueldo de chauffeur luego de ocurrido el incidente, que la corte mandó eliminar en su oportunidad, quedando dicha suma a recobrar reducido a $839.00 y por haber quedado además, según la prueba, reducida a $128.00 la partida de $158.00 que se hace figurar en la demanda, condenando además a la demandada al pago de las costas.''

El primer señalamiento de error dice así:

''1.—La Corte de Distrito cometió error al no resolver que el convenio sobre reparaciones probado por la demandada suplantó la póliza en cuanto a los daños procedentes del accidente a que se refiere la demanda.''

Aparece fácil y claramente, de la propia redacción de este señalamiento de error, que el fundamento del mismo se halla en una cuestión de apreciación de prueba. Así en el señalamiento se dice ''el convenio de reparación probado por la demandada.'' Y al argumentar, se trata la declaración del testigo Antonio Pavía, y el peso que a la misma dió la corte de distrito. Parecía lo más lógico que se hubiera asignado el error como de la apreciación de prueba, y se hubiera extraído la consecuencia en derecho, en cuanto a lo que pudiera calificarse de novación del seguro, que no otra cosa sería, de existir, la sustitución del antiguo por el nuevo contrato.

A la corte sentenciadora no ha convencido la declaración de Antonio Pavía, y más la convence la prestada por el mismo demandante, a quien su calidad de tal no hace recusable como testigo, ya que tiene a su favor la presunción de que está diciendo la verdad, y esa presunción no ha sido destruida. Las declaraciones escritas tienen en su desven-

taja, con respecto a las orales ante el mismo juzgador, la frialdad de lo escrito, y la falta de los elementos de acción y lógica emoción que son inseparables de la declaración expresada de palabra ante el mismo que ha de pesarla y valorarla. En este caso, el demandante vino ante la corte que le vió y le oyó, y pudo penetrar en el espíritu de su declaración, con el auxilio de los sentidos. El juez dió crédito a esta declaración, mejor que a la escrita o convenida de Pavía, respecto de la que declaró no ser prueba bastante.

La parte apelante alega que el juez se equivocó, porque no se trataba de la prueba del contrato de seguro, respecto del que la póliza era la mejor evidencia; y luego cita la doctrina del caso *Gerena* v. *Suau,* 36 D.P.R. 176. Pero es bueno recordar que la parte demandante admitió que el testigo Pavía habría de declarar como aparece del récord; pero no admitió la certeza de los hechos que por él aparecen declarados, y puso frente a esa prueba la declaración del demandante, y una póliza de seguro, que no aparece cancelada, y cuya cancelación no se ha alegado ni probado en forma alguna.

Asimismo, conviene establecer los verdaderos términos de la doctrina del caso *Gerena* v. *Suau,* de este Tribunal. Las declaraciones de Bartolo Suau, según dice este Tribunal, merecen "algún grado de consideración." Esto no quiere decir que esas declaraciones sean incontrovertibles. Tan es así que en la misma opinión se deja en seguida a salvo el derecho de la otra parte, diciendo:

"Sus manifestaciones pueden ser impugnadas como erróneas, pero su credibilidad no puede ser atacada en la forma en que se atacaría la de otros testigos."

Y antes, se ha dicho en la misma opinión, al tratar de estas declaraciones:

"Aunque la corte tiene perfecto derecho de hacer caso omiso de esta declaración de Bartolo Suau, si se convence por otra prueba que los hechos por él declarados eran diferentes a como él los expone. . ."

Sálvase así el derecho de las cortes inferiores a pesar y dar credibilidad a la prueba, derecho que les reconocen las cortes de apelación, sin perjuicio de la corrección de manifiestos errores que pudieran cometer.

En este caso ha surgido un conflicto de prueba, que la corte ha resuelto en favor de la presentada por una de las partes, y no hay nada que nos lleve a creer que en la resolución hubo manifiesto error, o que la corte estuvo influida por parcialidad, pasión o prejuicio.

Si examinamos la declaración de Antonio Pavía, encontramos que el demandante fué con él a la oficina de la demandada y admitió que los daños sufridos por su carro eran de poca importancia, y convino en enviar el carro a San Juan para que la demandada hiciera las reparaciones, y no mandó el carro y se negó a mandarlo; y que la demandada ha estado y está dispuesta a cumplir este convenio y a hacer las reparaciones. Es realmente difícil separar aquí lo que el testigo hubiera podido afirmar de propio conocimiento, de aquello que afirmara por referencia, y aun de aquello de que él, bajo las reglas de evidencia, no podría decir. Pero sí es necesario recordar que, salvo las presunciones concluyentes, no hay prueba alguna que obligue a un tribunal a resolver en determinado sentido. Sabia como es la Ley de Evidencia, sus preceptos no son férrea mano que aprisione la conciencia del juzgador, sino reglas que, antes que a otra cosa atiendan a la lógica corriente, y a las realidades de la vida. Así, el precepto del artículo 5 de esa ley, establece que no es precisa para el juzgador una prueba que excluya toda posibilidad de error, sino la certeza moral, o un grado de prueba que produzca convicción en un ánimo no prevenido. Y en harmónica consonancia en esta declaración se encuentran las que se hacen en la sección o artículo 162, que lee así:

"Artículo 162.—El efecto de la evidencia no es arbitrario, sino que se ejercerá con discreción jurídica, y sujeción a las reglas de evidencia."

La Corte de Distrito de Aguadilla se encuentra frente a las declaraciones contradictorias de Pavía y del demandante con la circunstancia de que éste, en el interrogatorio directo y en el contra-interrogatorio, explica de una manera lógica y aceptable su actitud en el caso, y la dificultad de trasladar su automóvil a San Juan; se encuentra con que existe la póliza del seguro, y ni se intenta probar que tal póliza, exteriorización y encarnación del contrato, haya sido cancelada, como parece la inevitable consecuencia de la interposición de otro contrato posterior. Y finalmente, ve en la póliza que la compañía aseguradora, desde el día en que el contrato se firmó, ha venido en la obligación de hacer las reparaciones en el caso en que fueran necesarias. Y aun dando por perfecta la declaración de Pavía, la obligación de reparaciones sería la misma que en la póliza se hizo constar, y no una nueva. No podemos asentir a la teoría de que en este caso hubo una novación; y aun en el caso de que la declaración de Pavía fuera considerada por la corte como perfecta, ello no envolvería más que una forma de cumplimiento de la obligación, y no una novación. Para que existiera la novación que se pretende sería preciso, de acuerdo con el artículo 1171 del Código Civil vigente en Puerto Rico que: (a) se hubieran variado el objeto o las condiciones principales de la obligación primera; o (b) que se substituyera la persona del deudor, o se hiciera la subrogación en la del acreedor. Y siempre, o la expresión decidida de que la obligación primitiva quedó extinguida, o la incompatibilidad absoluta (de todo punto incompatibles, dice el Código) entre la primera y la nueva. Y no hay nada de esto en el caso; ni franca declaración de haberse novado, ni absoluta incompatibilidad entre la obligación en la póliza y la que se pretende surgió después.

Si hubo contradicción y conflicto en la evidencia, la corte resolvió, y resolvió bien. Y si la cuestión es la de ley, rela-

tiva a la novación, ésta no existió nunca en el caso, de acuerdo con toda la prueba.

El segundo señalamiento de error puede, y debe ser estudiado conjuntamente con los que aparecen bajo los números 4, 5 y 6. Todos ellos se refieren a la clase de daños y perjuicios, su prueba y a su cuantía.

Estos señalamientos aparecen en el alegato en la siguiente forma:

"2.—La Corte de Distrito cometió error al no resolver que si el demandante tenía algún derecho de reclamación basado en la póliza, tal reclamación sólo podía incluir el costo razonable de las reparaciones.

"3.—La Corte de Distrito cometió error al permitir que Francisco Juliá, Ramón A. Cancio y Mamerto Molinary, testigos del demandante, declararan sobre el valor del automóvil sin estar debidamente cualificados para ello.

"4.—La Corte de Distrito cometió error al declarar probada la partida de $650.00 reclamada por depreciación del automóvil del demandante.

"5.—La Corte de Distrito cometió error al conceder al demandante el importe de las reparaciones y además la alegada diferencia entre el valor del automóvil antes y después del accidente.

"6.—La Corte de Distrito cometió error al conceder al demandante la suma de $128.00 por alquiler de otros vehículos."

La posición en que la apelante se coloca es bastante curiosa. En el primer señalamiento de error, insiste en que hubo una novación de contrato, por virtud de la que el demandante no podía invocar las obligaciones y convenios que constan en la póliza. Y en estos señalamientos de que tratamos, acepta como régimen del caso las obligaciones que nacen de la póliza. Claro es que deben cubrirse todas las posibilidades; pero hay una evidente incompatibilidad entre las dos teorías.

Para decidir en estos extremos que se nos someten se hace preciso tener presente lo convenido y hecho constar en la póliza de seguro, que es parte de la prueba. Según esa póliza la compañía aseguradora responde al asegurado de la

"pérdida o daño directo al automóvil descrito, causado solamente por choque accidental con otro automóvil, excluyendo, no obstante: (*a*) daños causados por la caída o vuelco del automóvil descrito, a menos que dicha caída o vuelco sea el resultado directo del choque accidental, y ocurra inmediatamente después de éste; (*b*) daño o destrucción causado directa o indirectamente por fuego; (*c*) daño a las gomas, a no ocurrir otro daño al automóvil."

Está fuera de discusión que los gastos de reparación del automóvil deben ser pagados por la demandada. Esta debió atender a la reparación tan pronto como prudencialmente pudo hacerlo, después de tener conocimiento de la ocurrencia del accidente.

Pero, en cuanto a la cantidad por depreciación del automóvil, hay que ahondar un poco más en ese concepto.

En la página 7 de su alegato cita la apelante alguna autoridad, que conviene reproducir:

"La regla corriente para fijar los daños es determinando la diferencia entre el valor del automóvil inmediatamente antes e inmediatamente después del accidente en casos de negligencia, y cuando se aplica esta regla, no puede incluirse el costo de las reparaciones; disponiéndose, sin embargo, que si el desperfecto es susceptible de reparación a un costo inferior a la depreciación de la propiedad debido al daño, la indemnización se limita al costo de tal reparación." Babbit on Motor Vehicles, 3a. ed., págs. 1410 y 1411.

"El montante de la indemnización por daños ocasionados a bienes muebles es la depreciación de la propiedad, a menos que la reparación de la misma cueste menos.

"Cuando debido a negligencia se han ocasionado desperfectos a bienes muebles, como por ejemplo, un automóvil o camión, y los mismos son susceptibles de ser reparados, la medida de los daños ocasionados al dueño es la diferencia en valor inmediatamente antes y después del accidente, con la condición de que, si pueden repararse por completo a un costo inferior a la depreciación ocasionada por el accidente, la indemnización se limita al costo razonable de las reparaciones." Rhodes v. Firestone Tire & Rubber Co., 197 Pac. 392.

Y en la página 8, la siguiente:

"De acuerdo con el Código Civil, sección 3333, relativa al incumplimiento de una obligación que no proviene de un contrato, el montante de la indemnización por daños ocasionados a bienes muebles, en ausencia de su destrucción total, es la diferencia entre su valor inmediatamente antes y después del accidente, disponiéndose que si la propiedad es susceptible de reparación a un costo inferior a su depreciación, la indemnización se limita al costo de la reparación." *Kincaid* v. *Dunn*, 148 Pac. 235.

Por su parte, el apelado cita también varias autoridades y entre ellas la decisión en el caso *Broadie* v. *Randall*, de Kansas, que aparece en el tomo 32, Am. L. R., página 709. Bueno es tener presente que esta decisión se refiere a un caso en que el demandado Bentley Randall, con el dedo escribió en un automóvil empolvado, la palabra "Bentley" quedando el barniz y la pintura marcados.

Parece la teoría más sana, y de más sólido fundamento la de que cuando no se alega y prueba la completa destrucción de los bienes muebles, y éstos pueden ser objeto de reparación, la mejor medida de los daños sea el costo de las reparaciones, y el valor del uso de los bienes mientras las reparaciones se llevan a cabo. Esta es la doctrina sustentada en varias jurisdicciones, y en los casos que por el apelante se citan en *Broadie* v. *Randall, supra:*

"Cuando se han ocasionado daños a bienes muebles por la negligencia de otra persona y los mismos pueden ser reparados, el montante propio de la indemnización a recobrar es el costo de las reparaciones y el valor de la pérdida del uso del objeto mientras está siendo reparado. Si no puede ser reparado, entonces el montante de los daños sería la diferencia entre el valor de la propiedad antes del accidente y después del mismo.

"Crossen v. Chicago & J. Electric R. Co., 158 Ill. App. 42; Weleetka Light & Water Co. v. Northrop, 42 Okla. 561, 140 Pac. 1140; Layton v. Sarpy County, 83 Neb. 628, 120 N. W. 179; McClure v. Broken Bow, 81 Neb. 384, 115 N. W. 1081; Kincaid v. Dunn, 26 Cal. App. 686, 148 Pac. 235; Peabody v. Lynch, 184 Ill. App. 78; Armstrong v. May, 55 Okla. 539, 155 Pac. 238; Watson v. Mississippi River Power Co., 174 Iowa, 23 L.R.A. 1916 D, 101, 156 N. W. 188, 13 N.C.C.A. 873; Adam v. Chicago, B. & Q. R. Co. 139 Mo. App.

204, 122 S. W. 1136; McGuire v. Post Falls Lumber & Mfg. Co., 23 Iowa 608, 131 Pac. 654; Kerns v. Kansas City, 79 Kan. 562, 100 Pac. 624; Thomas v. Warrenburg, 92 Kan. 579, 141 Pac. 255.''

En esta jurisdicción, la doctrina, legal ha sido, cuando menos, indicada en el caso *Molina* v. *Porto Rican Lloyd's*, 31 D.P.R. 127, de cuya decisión se toman los siguientes párrafos:

''2. Veamos ahora el primer pronunciamiento de la sentencia, o sea si se hizo o no una reparación adecuada. No estamos conformes con el criterio absoluto expresado por el juez sentenciador en su opinión en el sentido de que sea siempre necesario sustituir por piezas nuevas las averiadas. Si en vez de decir averiadas hubiera dicho rotas, o averiadas de tal modo que fuera imposible volverlas a su condición primitiva, sería distinto. Y en realidad de verdad lo último es lo que demuestra la prueba que ocurrió en este caso. De ahí que no constituya error perjudicial el indicado. No ya la prueba del demandante, sino la propia prueba de la demandada demostró que, por lo menos en cuanto al *chasis*, la reparación no fué adecuada.

''Reparar, según la misma jurisprudencia citada por la apelante, significa restaurar a su condición primitiva, y un *chasis* roto, partido, no queda reparado adecuadamente, esto es, restaurado a su condición primitiva, haciéndole un refuerzo interior con remaches como se hizo en este caso.

''3. Examinemos el segundo pronunciamiento. En casos de esta naturaleza cuando la compañía aseguradora cumple fiel y rápidamente sus deberes en cuanto a la reparación, generalmente no existen daños y perjuicios por el no uso del auto durante el período de la reparación. Pero cuando la compañía dilata el cumplimiento de su deber, cuando la reparación no es adecuada, cuando por otras causas a ella imputables impide que el dueño derive el beneficio positivo que estaba derivando del uso de su carro, claro es que proceden los daños y perjuicios. La corte de distrito apreció aquí esos daños en cuatrocientos dólares. Hemos revisado la prueba y sólo encontramos base para ciento diez y seis dólares.''

La doctrina legal de este caso fué citada en *Martínez* v. *Independence Indemnity Co.,* 36 D.P.R. 860.

Examinada la demanda en el caso que resolvemos, no se ve en ella la alegación de destrucción total del automóvil de

que se trata. Se alegan ciertos desperfectos consecuencia directa del choque o colisión; y de las alegaciones y la prueba aparece que esos desperfectos fueron reparados, sin que haya indicación de que el automóvil no quedara en buen estado; y, antes por el contrario, probado que el demandante ordenó y pagó la reparación, y aceptó el automóvil después de la misma, la creencia racional es que el automóvil quedó en buenas condiciones.

Pero es cierto también que la demandada, según aparece de la prueba, y del juicio formado por la corte sentenciadora para dictar su fallo, no procedió como debía, de acuerdo con las naturales consecuencias de su contrato de seguro, a hacer las reparaciones. Si ella lo hubiera hecho, el demandante no hubiera tenido que privarse del uso de su carro por un período de tiempo considerable. Por virtud de tal contrato, las partes en el mismo vienen obligadas, como dice el artículo 1225 de nuestro Código Civil,

". . . no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que, según su naturaleza sean conformes a la buena fe, al uso, y a la ley."

Ni la buena fe, ni el uso, ni la ley, autorizan a una parte en un contrato a demorar y diferir por largo tiempo el cumplimiento de sus obligaciones. Y la parte que así lo hace se halla bajo la sanción de los preceptos contenidos en los artículos 1069, 1070, 1071 y 1073 del Código Civil de Puerto Rico, cuyo texto es así:

"Artículo 1069.—La responsabilidad procedente del dolo es exigible en todas las obligaciones. La renuncia de la acción para hacerla efectiva, es nula.

"Artículo 1070.—La responsabilidad que proceda de negligencia es igualmente exigible en el cumplimiento de toda clase de obligaciones, pero podrá moderarse por los tribunales según los casos.

"Artículo 1071.—La culpa o negligencia del deudor consiste en la omisión de aquella diligencia que exija la naturaleza de la obligación y corresponda a las circunstancias de las personas, del tiempo y del lugar.

"Cuando la obligación no exprese la diligencia que ha de prestarse en su cumplimiento, se exigirá la que correspondería a un buen padre de familia.

"Artículo 1073.—La indemnización de daños y perjuicios comprende, no sólo el valor de la pérdida que haya sufrido, sino también el de la ganancia que haya dejado de obtener el acreedor, salvas las disposiciones contenidas en los artículos siguientes:

Por esa razón la sentencia no contiene error en lo que se refiere a la condena por $128, a que se refiere el señalamiento número 6; si bien reconocemos que la corte erró al condenar a la demandada al pago de los $650 por depreciación en el automóvil perjudicado.

No existen, pues, los errores que el apelante señala bajo los números 2 y 6 de su alegato, y sí el señalado bajo el número 5, y el bajo el número 4, por ser innecesaria la prueba de esa partida.

■■ En cuanto a la admisión de prueba consistente en las declaraciones de Francisco Juliá, Ramón A. Cancio y Mamerto Molinari (error señalado bajo el número 3, por la apelante) no encontramos que la corte cometiera error. Ellos aparecían suficientemente cualificados para declarar acerca de los extremos que les fueron sometidos. No es posible convertir las reglas de evidencia, por un exagerado tecnicismo, en un obstáculo al conocimiento de la verdad.

■ En cuanto a la imposición de las costas, hay que tener en cuenta que ella depende, en gran parte, de una sana discreción del tribunal; y en un caso como éste, en que se demuestra la indebida resistencia de la demandada a cumplir con las obligaciones que le imponía el contrato, la imposición de costas es algo que, a más de discreto y justo, es saludable y ejemplar. No existe, pues, el error que se señala bajo el número 7.

*La sentencia apelada debe ser confirmada en cuanto condena a la demandada a pagar al demandante el importe de las reparaciones de su automóvil, y los $128 de indemnización, y las costas, y revocada en los demás extremos.*